Judge Bryan

FILED
LODGED ___ ENTERED
___ RECEIVED

APR 10 2000

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

CLEAN CARE CORPORATION,
A WASHINGTON CORPORATION,

  Defendant.

NO. CR00-5182RJB

PLEA AGREEMENT

The United States of America, by and through Katrina C. Pflaumer, United States Attorney for the Western District of Washington, and Lawrence Lincoln, Assistant United States Attorneys for said District, and the defendant, CLEAN CARE CORPORATION ("CLEAN CARE" or "the corporation"), by and through, its President, David Bromley, and its counsel, Alan Zarky, enter into the following Plea Agreement pursuant to Rule 11(e)(1) of the Federal Rules of Criminal Procedure:

1. <u>Waiver of Indictment and Charge</u>   CLEAN CARE CORPORATION, having been advised of its right to be charged by Indictment and to be tried by a jury, agrees to waive that right and to plead guilty to the Information herein charging the corporation with two counts of unlawfully discharging pollutants from a point source to a navigable water of the United States without a permit, in violation of the Clean Water Act, 33 U.S.C. § 1311(a) and §1319(c)(2)(A). By entering this plea of guilty, the corporation hereby waives any objections to the charges predicated on the form of the charging Information.

PLEA AGREEMENT/CLEAN CARE CORPORATION — 1

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

2. **Maximum Penalties.** CLEAN CARE CORPORATION understands that upon a plea of guilty to the Indictment, the maximum penalty the Court may impose on the corporation as to each count of the Indictment is a fine of Five Hundred Thousand Dollars ($500,000), or Fifty Thousand Dollars ($50,000) for each day of violation, whichever is higher. Additionally, under 18 U.S.C. § 3013, the corporation is subject to a mandatory special assessment on each count of Four Hundred Dollars ($400), for a total of Eight Hundred Dollars ($800), which amount is to be paid to the Crime Victim Fund on or before the date of sentencing.

3. **Rights Waived by Pleading Guilty** CLEAN CARE CORPORATION, having been advised of and understanding the following rights, acknowledges that by pleading guilty, the corporation knowingly and voluntarily waives these rights:

   a. The right to persist in a plea of not guilty;

   b. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   c. The right to a trial before a jury, and at that trial, the right to the effective assistance of counsel;

   d. The right to confront and cross-examine witnesses;

   e. The right to compel or subpoena witnesses to appear on behalf of the corporation;

   f. The right to testify (through its officers, directors, agent, or employees) or to remain silent at trial, which silence could not be used against the corporation; and

   g. The right to appeal a finding of guilty, although the corporation retains the right to appeal any sentence herein.

4. **Applicability of the Sentencing Guidelines** CLEAN CARE CORPORATION understands and acknowledges that:

   a. Sections 2Q1.2 and 2Q1.3 of the United States Sentencing Guidelines (U.S.S.G.), promulgated by the United States Sentencing Commission, are applicable to this case;

   b. Under U.S.S.G. § 8C2.1, the guidelines applicable to determine fines for organizations do not apply to offenses governed by U.S.S.G. § 2Q1.2 and § 2Q1.3, although all other

PLEA AGREEMENT/CLEAN CARE CORPORATION --- 2

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

aspects of the guidelines applicable to organizations remain in effect, including the provisions for probation and community service;

c.. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation offered by the parties or by the United States Probation Office; and,

d. The corporation may not withdraw its guilty plea solely because of the sentence imposed by the Court.

5. Ultimate Sentence  CLEAN CARE CORPORATION acknowledges that no one has promised or guaranteed what sentence the Court will impose.

6. Restitution  CLEAN CARE CORPORATION agrees to make restitution to federal and state agencies, in an exact amount to be determined, for the cleanup costs associated with discharge of pollutants charged in the Information, to the extent that the CLEAN CARE CORPORATION is financially able to do so as determined by the Court or United States Probation Office. Restitution shall be due and payable immediately, although payment may be made in installments as directed by the Court or the United States Probation Office.

7. Statement of Facts  CLEAN CARE CORPORATION agrees to the following factual basis for its plea of guilty:

At all relevant times, CLEAN CARE CORPORATION was a Washington corporation with its principal place of business in Tacoma, Washington. CLEAN CARE was a wholly owned subsidiary of Bromley-Marr ECOS, Inc. ("BME"), a publically-traded Canadian company that acquired CLEAN CARE in August 1997. CLEAN CARE processed, recycled, and re-sold waste oil, waste antifreeze, used solvents, and other petroleum and hazardous substances at its facility at 1510 Taylor Way in Tacoma, Washington.

CLEAN CARE's facility included four tank farms used for the storage and processing of waste oil and hazardous waste. As part of its processing operations, CLEAN CARE used the tanks to separate waste water from waste oil and other hazardous substances that CLEAN CARE then recycled and re-sold. A containment wall surrounded each tank farm and was designed to contain the contents of the tanks in the event of an accident.

The facility also included a waste water treatment plant to pretreat the water that had come into contact with processing areas and waste water containing waste oil and other hazardous substances and pollutants, also known as "contact water." Under a permit with the City of Tacoma, CLEAN CARE was required to submit samples of its pretreated waste water to a laboratory for testing and to provide the laboratory test results to the City of Tacoma for approval. After the City of Tacoma had approved these test results, CLEAN CARE then was permitted to discharge the pretreated waste water into the Tacoma sewer system and the publically owned treatment works for further treatment.

CLEAN CARE also maintained a separate storm drain system for storm water runoff and other water that had not come into contact with processing areas and did not contain waste oil, hazardous

PLEA AGREEMENT/CLEAN CARE CORPORATION --- 3

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

substances, or pollutants, also known as "non-contact water.". The storm drain system allowed this non-contact water to flow through underground drains from the CLEAN CARE facility through an oil-water separator (to catch and retain any waste oil that might have incidentally contaminated the non-contact water) and finally to a drainage ditch along nearby Lincoln Avenue. The Lincoln Avenue ditch drained to the Blair Waterway, a tributary to Commencement Bay and the Puget Sound. Under the Clean Water Act, 33 U.S.C. § 1251 et seq., CLEAN CARE was prohibited from discharging waste water and water containing waste oil, hazardous substances, and pollutants through this storm drain system to the navigable waters of the United States.

Between at least in or about March 1998 and continuing until in or about February 1999, certain CLEAN CARE employees followed a practice of depositing excess waste oil and water containing waste oil, hazardous substances, and pollutants into the containment area of Tank Farm 3 at its facility. Those CLEAN CARE employees then discharged this excess waste oil and waste water through the storm drain system by opening a valve adjacent to Tank Farm 3, permitting the waste oil and waste water to flow directly into the storm drain system and ultimately to the Blair Waterway. This practice started at the direction of CLEAN CARE President Russell Bulman and CLEAN CARE Plant Manager Mark Mills in approximately March 1998. Both Russell Bulman and Mark Mills threatened to fire employees who did not participate in this practice. The exact number of discharges and quantities of waste oil and hazardous substances discharged is not known. During the time period above, however, the practice continued intermittently (and occasionally daily), and reportedly resulted in the release of approximately 150 gallons of waste oil per discharge.

In approximately late February 1999, BME President and CEO, David Bromley, was told of the practice and instructed Mark Mills not to dispose of waste water through the storm drain system. In early March 1999, Mark Mills was demoted from his position as Plant Manager and fired shortly thereafter. Also in March 1999, Russell Bulman resigned as President of CLEAN CARE and as a Director of BME.

Despite the earlier instruction from David Bromley, on or about March 26, 1999, personnel at CLEAN CARE, acting within the scope of their employment, deposited waste oil and waste water containing waste oil, hazardous substances, and other pollutants into the Tank Farm 3 containment area and opened the adjacent valve, thereby permitting the waste oil and waste water to be discharged through the storm drain system. The Government has no evidence showing that any managerial personnel at BME authorized this discharge. Later that same day, officials with the Tacoma Public Works Department inspected the storm drain system leading from the CLEAN CARE facility and observed waste oil and turbid waste water flowing from the storm drain system into the drainage ditch along Lincoln Avenue. The drainage ditch had a thick layer of oil residue on its surface.

Following the March 26 discharge, officials with the Washington State Department of Ecology (DOE) took samples of the waste oil and waste water from the CLEAN CARE tank farms, storm drain system, oil/water separator, drainage ditch, and the outfall to the Blair Waterway. Using hydrocarbon identification (fingerprinting) techniques, the DOE Laboratory reported positive matches between these samples, indicating that CLEAN CARE had discharged waste oil from Tank Farm 2 and Tank Farm 3 into the storm drain system. The DOE also identified other hazardous substances and pollutants in the samples. The DOE estimated that on March 26, CLEAN CARE had discharged approximately 2,000 gallons of waste oil and waste water. The DOE also determined that samples taken from the root stalk of vegetation in the drainage ditch matched samples from the CLEAN CARE facility, confirming the occurrence of earlier discharges.

8.      Elements of the Offense   The parties acknowledge and agree that the following elements underlie the offenses in this case: (1) On or about the dates set forth in Counts One and Two, CLEAN CARE knowingly discharged or caused the discharge of pollutants; (2) CLEAN CARE knew the identity

PLEA AGREEMENT/CLEAN CARE CORPORATION — 4

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

1  or at least the nature of the pollutants discharged, namely, waste oil and waste water containing waste oil
2  and other hazardous substances; (3) The pollutants were discharged from a point source to a navigable
3  water of the United States; and (4) The discharges were made without a National Pollutant Discharge
4  Elimination System permit for the discharges.

5      9.    <u>Cooperation Agreement</u>   CLEAN CARE agrees to provide truthful information and
6  cooperate completely in the Government's continuing investigation and prosecution of former CLEAN
7  CARE officials Russell Bulman and Mark Mills. This cooperation shall include providing access to
8  documents, relevant information, employees and officials deemed necessary by the Government in such
9  investigation and prosecution.

10      10.    <u>Non-Prosecution Agreement, Breach, and Waiver</u>   The United States Attorney's Office
11  for the Western District of Washington agrees not to seek any addition criminal prosecution against
12  CLEAN CARE, any affiliated or related corporate entity, and any managerial officials of CLEAN CARE
13  remaining at CLEAN CARE after March 26, 1999 (specifically excluding Russell Bulman and Mark
14  Mills), based on matters that are the subject of the Government's current criminal investigation into
15  unlawful discharges at CLEAN CARE and that are known to the Government at the time of this Plea
16  Agreement. CLEAN CARE acknowledges that nothing in this Plea Agreement limits the rights and
17  authority of the United States or any other governmental entity to take further civil or administrative
18  action against CLEAN CARE. If CLEAN CARE breaches any part of this Plea Agreement, the United
19  States Attorney's Office for the Western District of Washington retains the right to nullify this Plea
20  Agreement and present to the Grand Jury for Indictment all of the criminal violations established by the
21  evidence against any entity or individual. CLEAN CARE knowingly and voluntarily waives its right to
22  challenge the re-initiation of the original and additional charges following any breach of this Plea
23  Agreement.

24      11.    <u>Deferral of Sentence</u>   The Government currently is unable to determine CLEAN
25  CARE's ability to pay a fine, due to uncertainties about the total costs of clean-up, the availability of
26  insurance proceeds to CLEAN CARE, and the proposed sale of CLEAN CARE and/or its assets, among
27  other matters. The Government acknowledges that available funds from CLEAN CARE should be used
28  in the first instance for clean up costs and restitution. Accordingly, CLEAN CARE and the Government

PLEA AGREEMENT/CLEAN CARE CORPORATION — 5

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

agree that sentencing may be deferred, as deemed appropriate by the Government, until issues related to CLEAN CARE's ability to pay a fine are resolved to the satisfaction of the Government.

12. <u>Statements to the Court and Probation Office</u>   The parties reserve the right to speak to the Court at the time of sentencing pursuant to the Federal Rules of Criminal Procedure. The United States reserves the right to provide to the Court and the United States Probation Office a statement of facts regarding all criminal conduct for which the corporation was responsible.

13. <u>Voluntariness of the Plea</u>   CLEAN CARE CORPORATION, through its President, acknowledges that it has reviewed the terms of this Plea Agreement with counsel and understands the contents of this Plea Agreement. The corporation further acknowledges that it has entered this Plea Agreement freely and voluntarily, and with the advice and concurrence of counsel, and that no threats or promises, other than the promises contained in this Plea Agreement, have been made by the United States to induce it to enter into this Plea Agreement.

14. <u>Completeness of the Agreement</u>   The United States, CLEAN CARE CORPORATION, and counsel for the corporation, acknowledge that the above-stated terms and conditions constitute the entire Plea Agreement between the parties and deny the existence of any other terms and conditions not expressly stated herein.

DATED this _10TH_ day of ___April___, 2000.

_____
CLEAN CARE CORPORATION
Defendant, By Its Duly Authorized Attorney

_____
ALAN ZARKY
Defendant's Attorney

_____
LAWRENCE LINCOLN
Assistant United States Attorney

PLEA AGREEMENT/CLEAN CARE CORPORATION — 6

UNITED STATES ATTORNEY
SEAFIRST FIFTH AVENUE PLAZA BUILDING
800 FIFTH AVENUE, SUITE 3600
SEATTLE, WASHINGTON 98104
(206) 553-7970

car

United States District Court
for the
Western District of Washington
April 12, 2000

\* \* MAILING CERTIFICATE OF CLERK \* \*

Re:  3:00-cr-05182

True and correct copies of the attached were mailed by the clerk to the following:

    Lawrence R Lincoln, Esq.
    U S ATTORNEY'S OFFICE
    STE 5100
    601 UNION ST
    SEATTLE, WA   98101-3903
    FAX 553-0755

    Alan Zarky, Esq.
    DUBITZKY & ZARKY
    803 WATERFRONT PLACE ONE
    1011 WESTERN AVE
    SEATTLE, WA   98104
    FAX 467-8170

    USPO - Tacoma
    US PROBATION OFFICE
    ROOM 1310
    1717 PACIFIC AVE
    TACOMA, WA   98402-3231
    FAX 1-253-593-6378